### Burt *vs.* Place.

In an action for a *malicious prosecution*, the recovery in a court of competent jurisdiction in favor of the plaintiff in the suit complained of as malicious, is *not conclusive evidence of probable cause*. *It seems* that the *allegation* that the plaintiff in such suit, with a knowledge that he had no cause of action and that the defendant had a full defence, caused the defendant to be detained as a *prisoner* until judgment could be obtained against him, for the purpose of preventing a defence and hindering him from procuring the necessary evidence to substantiate his defence, would countervail the effect the admission of such recovery; at all events, *evidence* of the want of probable cause *rebuts* the inference of the existence of probable cause arising from the fact of a recovery in the suit complained of as malicious.

The rule requiring the plaintiff to shew that the suit complained of as malicious was decided in his favor, is complied with by shewing a judgment in his favor in the *common pleas*, on an appeal from a justice's judgment, although such latter judgment was in favor of his adversary.

Evidence of the proof adduced, on the trial of the suit complained of as malicious, is inadmissible for the purpose of shewing probable cause, where the defendant himself was not the witness; the party is bound to produce the witnesses, and is not permitted to prove what they testified to.

A *nisi prius* roll and *postea*, which ought regularly to have been produced *at the circuit* to admit proof of what transpired on the trial of a former cause, may be brought into court *in bank*, and will be received on the argument of a case made at the trial.

THIS was an action on the case for malicious prosecution, tried at the Oswego circuit in June, 1828, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The declaration contains seven counts. In the first it is stated that on the 1st July, 1826, the defendant not having any reasonable or probable cause of action against the plaintiff, but contriving and intending to imprison, harrass, oppress and injure the plaintiff, falsely and maliciously sued out a *warrant* under the $50 act, in his favor, against the plaintiff, on which the plaintiff was arrested, carried before a justice of Oswego county, who issued the process, and detained two days; that the defendant set up a claim for the price of a yoke of oxen alleged to have been sold and delivered by him to the plaintiff; that the defendant, well knowing that he had no reasonable or probable cause of action against the plaintiff, and that the plaintiff had a good and perfect defence against the pretended claim, maliciously intending to harrass, oppress and injure the plaintiff, caused him to be detained a prisoner on such arrest, by means whereof the plaintiff was unable to procure the necessary evidence for his defence, and which he might have procured but for such arrest and imprisonment; that a judgment was obtained by the defendant against the plaintiff for $50 damages and costs of suit; that the plaintiff appealed from such judgment to the common pleas of Oswego, in which court it was adjudged that the defendant take nothing by his plaint, whereby the suit of the defendant became and was and is wholly ended and determined. The second, third and fourth counts were similar to the first count.

The fifth count is similar to the first in setting fourth the suing out of the warrant, the arrest and the claim set up by the defendant, and in the allegation that the defendant well knew that he had no reasonable or probable cause of action against the plaintiff. Then follows an averment that the plaintiff had a good and perfect defence against the claim of the defandant, and could have procured evidence to shew such defence, and to prevent a judgment against him, as the defendant well knew; but that the defendant, maliciously intending to vex and injure the plaintiff, and to prevent him from procuring such evidence, caused him to be detained a prisoner under such arrest until he procured a judgment to be rendered against the plantiff, in favor of the defendant. for $50 damages and costs of suit, for want of such evidence

to prove his defence, and which evidence he could not pro-
cure, by reason of the arrest and imprisonment. Then the
appeal is set forth and a judgment in the common pleas
against the defendant. The *sixth* count is similar to the
*fifth*, and the *seventh* is the same, except that after setting
forth the judgment before the justice, it is averred that the
defendant, to prevent an appeal, caused an execution to be
issued on the judgment, on which the plaintiff was arrested
and committed to the jail of the county and confined for ten
days; that he appealed, and judgment was rendered in the
common pleas in his favor. The defendant pleaded the ge-
neral issue.

On the trial of the cause, the following facts were shewn
on the part of the plaintiff: On the 13th June, 1826, the
defendant obtained *three* warrants to be issued against the
plaintiff by a justice of the peace of *Oswego* county, on which
the plaintiff was arrested and brought before the justice on
the 24th July, 1826. The defendant declared against the
plaintiff in three several causes: in one for work, labor and
services; in another, for a yoke of oxen sold and de-
livered; and in the third, for a horse sold. The plaintiff
pleaded the general issue in each suit, and asked for an
adjournment; but not being able to give bail for his ap-
pearance, the adjournment was refused, the causes were tried,
and a judgment rendered in each suit in favor of the defen-
dant for $50 damages, besides costs of suit. Immediately
after obtaining those judgments, the defendant obtained an-
other warrant against the plaintiff, which was returned
forthwith and another judgment rendered against the plain
tiff for $9,96 damages, being for $8, money lent, and
the interest thereof, and an execution issued thereon on the
same day, on which the plaintiff was arrested and confined
in the jail of the county of Oswego. The plaintiff *appealed*
from the judgments rendered against him by the justice to the
common pleas of Oswego, on which appeals judgments were
rendered for the plaintiff in this cause.

To shew the want of *probable cause* for the suits prosecuted
by the defendant, it was proved that in in 1822 the plaintiff,
having a law suit with his brother, the defendant, induced

the plaintiff to covey to him an undivided third of a tavern stand which had descended to him from his father, the defendant agreeing to allow the plaintiff $300 for the property, $250 to be secured by notes, and $50 to be allowed the defendant for assisting the plaintiff in his contest with his brother, and a deed was accordingly executed by the plaintiff to the defendant. In December, 1822, the defendant sold the land conveyed to him by the plaintiff, to one Addington, for $250, whereupon the plaintiff brought a suit against the defendant to recover the price of the land, which was tried at Whitestown in March, 1826 ; on the trial of which cause the defendant insisted that he had paid the plaintiff for the land in a horse, a yoke of oxen, in services in his suit with his brother, and in cash the sum of $8. After evidence was adduced on both sides in relation to the defence set up, the defence was drawn as to all but the $8, and the defendant insisted that the plaintiff was not entitled to recover, on the ground that the contract between the parties was void for maintenance. A verdict was taken for the plaintiff for the price of the land, deducting the $8, subject to the opinion of this court on the question of maintenance ; and this court, (6 Cowen. 431,) decided that the objection was well taken, and that the plaintiff was not entitled to recover. Further to shew the want of probable cause, it was proved that the plaintiff was a very poor man, and had never been known to be the owner of a yoke of oxen or a horse.

To prove *malice*, it was shewn that the defendant, after obtaining the warrants issued in June, 1826 put them into the hands of a constable of *Oswego* county, telling him that the plaintiff was at work in *Onondaga* county, and hiring him to decoy the plaintiff into *Oswego* county, so that he might arrest him. The constable went in pursuit of the plaintiff, but he had left the place. About two months afterwards, the plaintiff happened in Oswego county, and was arrested. When the defendant put the warrants into the hands of the constable, he told him that the plaintiff had got a verdict against him at Whitestown for almost $300, and wanted to get some judgments to off set against the verdict ; and if the plaintiff would give up the verdict, he would let him go clear. When the plaintiff was

arrested on the warrants, the defendant retained an attorney so as to prevent him from being employed by the plaintiff, telling the attorney, "I have a fellow coming that I am going to train, and I want to buy you to hold your tongue;" adding, that if he did not engage for the plaintiff, the latter would not be able to obtain counsel, as there was no one else he could get, he having employed the other attornies in the place; and telling him further, " he has got a judgment against me for $275, and now I've got him, and I'll train him till he gives up that judgment." On the next day, the attorney asked the defendant if he 'had obtained his judgments, and if they were for the same property which he set off on the former trial; to which he answered, " if it is, that is my business." It was further proved that whilst the plaintiff laid in jail on the execution issued against him, the defendant caused a *summons* to be served on him, on which he obtained another judgment against the plaintiff for $50 for the same yoke of oxen, for which one of the judgments obtained in July was rendered.

The plaintiff having rested, the defendant moved for a non-suit on the ground that the judgments obtained by him before the justice were conclusive evidence of probable cause. The judge decided that the judgments were *prima facie* but not conclusive evidence of probable cause, denied the motion, but reserved the question for the decision of this court.

The defendant then offered to shew by the justice who rendered the judgments in his favor the proof adduced by him on the trials before the justice. The judge decided that the evidence was inadmissible, and that probable cause could be shewn only by the production of the witnesses on whose testimony the judgments were rendered, or by other witnesses.

In the progress of the trial, an objection was taken as to parol proof being given of what transpired on the trial at Whitestown, in March, 1826, unless the nisi prius record and postea were produced. The judge overruled the objection, on the ground that evidence had been given already by both parties of that trial, and that the objection came too late; he however reserved the question for this court.

NEW-YORK,      The jury, under the direction of the judge, found a ver-
May, 1830.    dict for the plaintiff for $825, subject to the opinion of this
~~~~~         court on the points reserved.
Burt
v.
Place.

*E. Allen.* for plaintiff. The judgments obtained before the
justice in the suits alleged to be malicious are not evidence of
probable cause, either conclusive or *prima facie*, obtained as
they were under the circumstances alleged in the declaration
and proved on the trial. The plaintiff had no opportunity to
gainsay the claims set up against him. In the case of *Whit-
ney* v. *Peckham,* (15 Mass. R. 243,) it was held that a con-
viction before a magistrate was conclusive evidence of prob-
able cause; but that was a criminal case, and therefore sup-
posed to be distinguishable from the present.

The production of the *nisi prius* roll and *postea* of the for-
mer trial was unnecessary, after the defendant had examined
witnesses as to what transpired on that trial. If, however,
the non-production of them was a defect in the testimony, it
is now supplied, (and the counsel produced the papers.) This
is admissible; for the court will not send back the cause for
a new trial if evidence resting in records and which cannot
be controverted is produced on the argument, (3 Johns. C.
125. 2 Caines, 224. 2 Johns. R. 46.)

The judge correctly excluded the testimony offered of what
the witnesses testified to. before the justice; had the witness-
es been dead, or had the defendant been a witness in a crimi-
nal prosecution charged to be malicious, then evidence of
the testimony of the witnesses or of the party would have been
admissible, but not otherwise. (Bull. N. P. 14.)

*S. Beardesly,* for defendant. On the face of the declar-
ation, it appearing that judgments were rendered for the de-
fendant here in the suits before the justice, it is manifest that
there was no want of probable cause; without proof of the
claims of the plaintiff in those suits, there could have been no
recoveries. Those judgments are conclusive evidence of
probable cause; (15 Mass. R. 243;) and it cannot vary the
conclusion whether the judgment rendered was in a criminal
or in a civil suit. The case of *Reynolds* v. *Kennedy,* (1 Wils.
232,) was a condemnation under the excise laws; and there

it was held, because judgment was given for the complainant,

that the prosecution was not malicious. The fact of the party appealing, and judgments being sebsequently rendered in his favor in the common pleas, does not affect the question of probable cause for originally bringing the suits. There may have been malice in this case, but malice is not proof of want of probable cause. (10 Johns. R. 106.) The judge erred in receiving testimony of what transpired on the former trial between the parties, without requiring the production of the postea, and in refusing proof of the evidence on which the judgments were rendered. The damages were excessive.

*By the Court,* MARCY, J. In the examination of the plaintiff's witnesses and their cross examination by the defendant, allusions had been made to, and something said about a trial and the matters involved therein which had previously taken place between these parties at a circuit court in Oneida county. When the record and postea in that suit were called for to ascertain what was the issue therein, the judge considered that so much had already been said by both parties as to that matter, that the production of them had been dispensed with, and that what was in issue might be shewn by parol. The defendant objected to this decision then, and now makes it a point on the argument. The objection, if well taken at the circuit, is now removed by the production of the papers. (3 Johns. C. 125. 2 Caines, 224. 2 Johns. R. 46.) The principal questions to be settled are, 1. Where the judgments against the plaintiff in the justice's court *conclusive evidence* of probable cause ? 2. Was there a sufficient want of probable cause shewn by the plaintiff in this suit ? The facts proved by the plaintiff make out a very strong case of malicious and vexatious prosecution, and it would be a matter of regret if any inflexible rule of law stood in the way of a proper remedy for the party injured. It is a general principle, that the suit alleged to have been malicious must have been terminated in favor of the defendant therein, and this fact must appear on the face of the declaration. The suits complained of in this case as malicious, were instituted in a justice's court, and the plaintiff there was successful ; but the defendant

brought appeals on them and prevailed in the common pleas. The appeals were *further proceedings in the same suits*, and the judgments ultimately rendered in favor of the defendant below in the appeal causes are determinations that satisfy the rule of law, which requires that the suits alleged to be malicious should be decided in favor of the plaintiff in the action for malicious prosecution.

It is said, however, that the recovery by the plaintiff before the magistrate is conclusive evidence of probable cause. This position is fully warranted by the case of *Whitney* v. *Peckham*, (15 Mass. R. 243.) It is fairly to be inferred, I think from the report of that case, that it was not much considered. No arguments of counsel are given, and nothing is said by the court; all we learn is, that the nonsuit was confirmed, which was directed by the judge who tried the cause, he holding that the conviction before the magistrate, acting on a matter within his jurisdiction, was conclusive evidence of probable cause. The only case referred to in support of this decision is *Reynolds* v. *Kennedy*, (1 Wils. R. 232.) It is to be presumed that the supreme court of Massachusetts had no other views than those contained in that case, and that it was not intended by them to establish any principles different from those found therein, The case of *Reynolds* v. *Kennedy* was well considered; it was twice argued, and the opinion of the court given after mature advisement. It is to be considered as a highly respectable authority for what it professes to establish. The entire view of the court in that case appears to me to be presented in the last sentence of the opinion delivered by Ch. J. *Lee*; he says: "Upon the whole, we think the plaintiff himself has shewn by his declaration that the prosecution was not malicious, because the sub-commissioners gave judgment for the defendant, and therefore we cannot infer any malice in him." It is no where said in the case, that under no circumstances could malice be inferred if any inferior tribunal had given judgment in favor of the prosecutor of a suit alleged to be malicious. Such is not the necessary inference, and Eyre, as baron of the exchequer, thinks that the expressions of Ch. J. *Lee* should have been a little varied, and if varied as he thought they ought to be,

they would in my judgment seem to repel the inference that the condemnation of the sub-commissioners was conclusive upon the question of probable cause. He was of opinion that instead of saying, as Ch. J. Lee did, that "*we cannot infer malice*," it would have been more correct to say "*we will infer that there was probable cause for prosecuting the brandy to condemnation.*" (1 T. R. 505, 6.)

We have an allusion to this case of *Reynolds* v. *Kennedy* in the opinion of Lord Mansfield and Lord Loughborough, in the celebrated case of *Johnstone* v. *Sutton*, which shews that they viewed it much in the same light as Baron Eyre had done. They say, that whether the circumstances alleged to shew probable cause or not are true and exist, is a matter of fact ; but whether supposing them true they amount to a probable cause, is a question of law ; and *upon this distinction proceeded the case of Reynolds* v. *Kennedy.* (1 T. R. 545.) Taking that case as presented by the report, and as explained by the learned judges to whom I have referred, it seems to be no more than this, that if it appears by the plaintiff's own declaration that the prosecution which he charges to have been malicious was before a tribunal having jurisdiction, and was there decided in favor of the plaintiff in that court, nothing appearing to fix on him any unfair means in conducting the suit, the court will regard the judgment in favor of the prosecution satisfactory evidence of probable cause. The question seems to have been, what was sufficient, rather than what was conclusive evidence of probable cause.

The case now before us very different. Though the plaintiff admits in his declaration, that the suits instituted before the magistrate by the defendant were decided against him, he sufficiently countervails the effect of that admission by alleging that the defendant well knowing that he had no cause of action, and that the plaintiff had a full defence, prevented the plaintiff from procuring the necessary evidence to make out that defence by causing him to be detained a prisoner until the judgments were obtained ; and by alleging that the imprisonment was for *the very purpose of preventing a defence* to the actions. We are asked by the defendant to look at the plaintiff's declaration, and to say there was evidence of probable

cause because it appears therein that the magistrate gave judgments in his favor, when the plaintiff at the same time that he confesses that fact, alleges it to be the result of the malicious, vexatious and oppressive acts of the defendant in designedly depriving him of the opportunity and necessary means to defeat the unfounded prosecutions. When the court look at the declaration for evidence of probable cause, they must assume that *the whole* of it will, or can be proved ; and thus viewing it, can we say that it is like the declaration in the case of *Reynolds* v. *Kennedy felo de se ?* Can we believe that the declaration in that case would have been considered by the court as furnishing evidence of probable cause, if it had shewn in addition to the condemnation of the brandy by the sub-commissioners that the defendant knew that the brandy was not subject to be condemned, and that the plaintiff had the means of proving that fact, but was prevented from doing so by the wrongful acts of the defendant ? I cannot think it would have been so viewed. Taking all the allegations in the declaration in this case for true, I cannot believe we are required or warranted to infer that there was probable cause for the suits that were instituted by the defendant before the magistrate.

If we look beyond the declaration to the evidence, we see an iniquitous abuse of the process of the law to accomplish an illegal purpose. When the warrants were issued against the plaintiff he was in Onondaga county, and the defendant engaged the constable to decoy him within Oswego so that he might be arrested. He was taken a great distance from his friends before a magistrate, where by reason of being a stranger, he was unable to procure the requisite bail to entitle him to an adjournment. After the arrest, the defendant went to a person on whom he supposed the plaintiff would be likely to call for assistance, and attempted to purchase his silence, at the same time confessieg that he had got the plaintiff, and intended to *train* him until he gave up the verdict which had been obtained in the supreme court. After stating that he had recovered judgments, and for what cause, he observed in answer to a question, if they were not obtained for the same property that had been set off in the former

suite, "It it is, that is my business." It is proper to remark, that the defendant in this conversation did complain of the plaintiff's conduct, alleging that he had recovered for the land, and at the same time wanted to keep what he had paid him for it.

Immediately after judgments were rendered against the plaintiff on the three warrants on which he was first brought before the magistrate, a fourth warrant was issued, a judgment obtained for money paid, and the plaintiff committed to jail on an execution issued thereon. This judgment was obtained on a claim for money paid which was allowed to the defendant as a set off on the trial of the cause in which the plaintiff obtained a verdict against him at Whitestown. There is no substantial allegation in the declaration which was not proved. The evidence exhibits a case of flagrant oppression. If the declaration does not shew want of probable cause, there is abundant proof of the want of it in the testimony.

The defendant offered to shew by the justice, by way of making out probable cause, the evidence on which the judgments were rendered. This was objected to by the plaintiff, and overruled by the judge. The defendant contends that there was error in this decision. Where the prosecution alleged to have been malicious was for a crime and the defendant was a witness, he was allowed to shew what was his testimony. (Buller's N. P. 14. *Scott* v. *Wilson,* Cooke's Rep. 315. *Moodey* v. *Pender,* 2 Hayw. 29.) But I apprehend no case can be found sanctioning the course proposed to be taken on the trial of this cause. If the defendant wished to shew probable cause, he should have done it otherwise than by proving by the magistrate what had been proved before him when the defendant procured the judgments against the plaintiff.

It is true that the jury gave liberal damages, but the conduct of the defendant was such as seemed to call for strong reprobation. The sacred functions of a tribunal of justice were perverted to the purposes of private oppression. He who is proved guilty of this desecration should, for example's sake, meet with unstinted justice.

Judgment for the plaintiff.