By the Court.—Curtis, J.
In order to maintain this action, it devolves upon the plaintiff to establish that there was a want of probable cause for the criminal prosecution of which he complains, and that this prosecution on the part of the defendant was malicious.
When the facts are undisputed, or when they fail to show a want of probable cause, a question of law arises, which it comes within the province of the court to decide. But when there is conflicting evidence as to the matters insisted upon as constituting a want of probable cause, and the facts are in dispute, then it is for the jury to determine what the facts are. Whether the facts found to exist constitute probable cause is still an abstract question of law to be determined by the court (Weaver v. Townsend, 14 Wend. 192 ; Bulkeley v. Keteltas, 6 N. Y. 387).
The defendant to show at the trial that there was a probable cause for his prosecution of the plaintiff, proved that the books kept by the plaintiff in the course of his employment as book-keeper for the defendant, disclosed that there were items to the amount of several hundred dollars entered in the petty cash book as drawn by him which were not posted by him in the general cash book, and also items amounting to several hundred dollars entered in the general cash book, which were not posted by him to his account in the ledger. There were also erasures in the ledger in the plaintiff’s account, true additions having been erased and incorrect additions, in the plaintiff’s favor, inserted in their place. It was also shown that soon after the defendant’s calling the plaintiff’s attention to these matters and demanding payment for what the *45 books upon a statement prepared from them by another book-keeper employed by the defendant for that purpose showed to be due, the plaintiff conveyed a house and lot in Brooklyn belonging to him to the defendant, and the plaintiff’s wife also conveyed a house and lot in Brooklyn, standingin her name, to the defendant, and a general release was given them by the defendant. The property thus conveyed appears to have been substantially all the means of the plaintiff and his wife. She refused to convey her house to the defendant, until he gave her a check for two hundred and fifty dollars, which he did, and which was paid. There was testimony that the plaintiff admitted that the statement of the defendant’s claim was correct.
These facts establish prima facie probable cause for the criminal prosecution of the plaintiff by the defendant.
The plaintiff testified that he kept a memorandum-book, in which he entered sums of money that he occasionally loaned from his own drawings to the defendant, and that this memorandum-book completely explained the apparently improper credits he had given himself in his ledger account, by showing that the sums deducted from his account equalled those which this memorandum-book showed he had loaned the defendant. The plaintiff also testified that the defendant, the day after making the claim upon him, came to his house in Brooklyn, where he was ill in bed, and that he then explained to the defendant that this private memorandum-book would show the amounts loaned to him by the plaintiff, and which were deducted from the ledger when he made out his cash account, and that the defendant then asked to see this memorandum-book ; that he allowed him to take it and the defendant carried it away with him, and ever afterwards denied having it, or having seen it. The defendant testified at the trial of the plaintiff before the criminal court, *46 where the plaintiff was acquitted, that he never heard of this memorandum-book until it was spoken of at that trial.
The statement of the plaintiff that the defendant carried away the memorandum-book was corroborated by the evidence of his wife; Louis H. Dickerson, a member of the bar, testified, that he called with the plaintiff on the defendant three or four days after this interview, and that the plaintiff then stated to the defendant, that the book which he gave him the other day at his house would explain all, to which the defendant replied, “I know nothing about that.” The statement of the plaintiff that he thus loaned money to the defendant at times is claimed by the plaintiff to be confirmed by the testimony of the defendant at the criminal trial, that the plaintiff had charge of all his money, and that when he wanted money for himself he asked the plaintiff for it.
It appeared that the plaintiff had more than twenty years previously entered the defendant’s employment, as a general clerk or porter in his hat store; that he had remained with him continuously during that period, with one exception of a few months ; that he at one time had a small interest in the profits of the business ; and that their relations were close and confidential.
-There was evidence that the plaintiff bad not much - knowledge of book-keeping. He testifies that when he showed the erasure and amount of loan of four hundred dollars, subtracted on the cash-book, and also his . memorandum-book to the defendant, the latter said, “it was all right,’’and he did not, for this reason and the confidence that was existing between them, charge himself by independent entries.
The plaintiff testified that after the conveyances by him and his wife to the defendant, the latter on one occasion offered to give him a recommendation, if he would go to Philadelphia or Baltimore.
*47 The testimony shows that the plaintiff, at the time-the defendant first made the claim, was in a feeble condition owing to illness, and tends to show that at no-period has he been a very strong man intellectually.
The defendant denies having ever seen the memorandum-book testified to by the plaintiff, and states-that his proposed recommendation was for only industry and sobriety. The clerks who were then in the-defendant’s employ also testify that they never saw or heard of this memorandum-book.
There was conflicting testimony as to the value of the property conveyed to the defendant, and as to whether it was in excess of the amount claimed by the defendant.
There was the testimony of some witnesses introduced, tending to impeach the defendant’s general character for truth and veracity, but it was sustained by several other witnesses called on his behalf.
The criminal prosecution 'was commenced about-two months after the conveyance of the houses to the defendant, and after the plaintiff had obtained a situation in another New York hat store, and a few days-after an altercation by the defendant with the plaintiff’ s wife.
If the testimony on the part of the plaintiff was true, the plaintiff was not only innocent of the charge made against him by the defendant, but the defendant, when he proceeded against him criminally, knew it, and in addition to that, wrongfully withheld from him the memorandum-book that contained the explanation of the irregularities apparent upon the books.
It is also clear, if what the plaintiff claims to be the facts of the case are so found by the verdict of the jury, and rightfully so found, that there was not only a want of probable cause for the prosecution, but that *48 the prosecution sprung from base motives, and was malicious.
The defendant moved to dismiss the complaint at "the trial, on the ground that the defendant had probable cause for the prosecution of the plaintiff, and that there was no proof of any malice.
To the denial of this motion he excepted.
Upon the conflict of testimony in respect to this, ■questions of fact arose, which it would have been erroneous for the court to have taken from the jury.
These qiiestions were very fairly and clearly submitted to the jury, and their finding was in favor of the plaintiff. It is in substance, that the prosecution was instituted maliciously, and without probable ■cause, and without the prosecutor’s belief that the charge made by him was true.
Upon considering the evidence, it is impossible to ■sustain the claim of the defendant, that this verdict is ■against the evidence, and the weight of evidence, and wholly unsupported by the testimony. The evidence was conflicting, and it was exclusively for the jury to ■determine what was the truth. It is true, that public policy requires that a person prosecuting a criminal -charge in good faith and upon reasonable grounds, ■should be protected from liability therefor; but when the prosecution is claimed to have been in bad faith, ■and groundless, and there is evidence introduced to that effect, upon which the jury so find, it neither accords with the law nor with public policy, that such a verdict should be lightly disturbed. It matters not how this conflicting evidence may have impressed the ■court; the jury are solely to determine what is the fact.
The defendant excepted to the charge of the judge, in instructing the jury that if they found that, prior to the complaint by the defendant charging the plaintiff with embezzlement, the plaintiff gave to the defendant *49 a memorandum-book containing memoranda of sums of money paid to the defendant by the plaintiff, which would explain the apparent errors and discrepancies in the books of the defendant kept by the plaintiff, in a way consistent with plaintiff’s innocence of the charge charge of embezzlement, then the defendant had no probable cause for charging the plaintiff with embezzlement.
• It is claimed that, even if the defendant did receive such a book from the plaintiff, he was under no obligation to look at it.
Embezzlement is the fraudulent appropriating to one’s own use, the money or goods entrusted to one’s care and control by another. This very relation implies that the party so entrusted shall account with bis principal. To hold that the principal may deprive the person he so entrusts of his means of accounting, and that he may shut his eyes and refuse to look at his explanation or to account with him, and proceed to prosecute criminally, would be a harsh rule to establish, and lead to oppressive abuses.
Heither can the defendant’s exception to the part of the charge—where the jury were instructed that if the plaintiff offered to explain with this book, these same apparent errors and discrepancies, and the jury believed on the evidence such book would explain them, there was no. probable cause for the prosecution—be sustained. The same views apply to this as to the preceding exception. It was as much the duty of the defendant to receive from the plaintiff, his clerk, his reasonable and sufficient explanation in respect to the matters entrusted to him, as it was the duty of the plaintiff to render such explanation. The law seeks to protect both in their respective relations, and neither are placed subject to the unreasoning or blind will of the other.
The remaining exceptions by the defendant to the *50 judge’s charge were to instructions that if they found that the defendant prior to the complaint against the plaintiff charging him with emblezzlement, settled with the plaintiff for the moneys the defendant afterwards charged the plaintiff with having embezzled, as.and for a debt on contract, expressed or implied, such fact would be evidence tending to show that the defendant did not believe the plaintiff had emblezzled the moneys ; and that if they found that there was no probable cause for the arrest and indictment of the plaintiff, malice may be implied.
It is apparent, that- if the defendant in the first place, and when the matter was fresh in his own mind, settled with the plaintiff as and for a contract debt, that such settlement would tend to show that the defendant did not believe the plaintiff was guilty of embezzlement It is reasonable to infer that the defendant’s conduct in that respect, was governed by his belief. It was proper for the court to submit it to the jury, as tending to show what was his belief. In the conflict of evidence it was a circumstance which the jury might properly consider and give it just weight.
As a general principle, where there is no probable cause for the prosecution, malice may be implied.
In the present case, if the defendant, as the jury found, wrongfully deprived the plaintiff of his means ■ of exculpation, and then prosecuted him criminally, it would be on its face a malicious act, and such without resorting to any very delicate theory of malice by inference and implication to establish it (Murray v. Long, 1 Wend. 140 ; Burhans v. Sandford, 19 Wend. 417 ; 2 Green. Ec. § 453).
Several exceptions’ were taken by the defendant at the trial to the admission of evidence in reference to the original employment of the plaintiff by the defendant, the terms upon which it continued, the general release from the defendant to the plaintiff, the conveyances *51 from the plaintiff and from his wife to the defendant, the impaired health and reduced circumstances and impoverishment of the plaintiff after his arrest, the appearances of the defendant before the two grand juries, and the indictment found by the last grand jury on which he was tried. It was claimed that all this was immaterial and calculated to prejudice the defendant with the jury.
The rule of damages in an action for a malicious prosecution is not a restricted one. Indemnity is awarded for all the injury to reputation, feelings, health, mind, and person caused by the arrest, including the expenses of the defense (Sheldon v. Carpenter, 4 N. Y. 579 ; 2 Green. Ed. § 456).
The plaintiff claims that he sustained injury in these respects, and that for the purpose of so injuring him the defendant preferred the criminal charge against him. The pre-existing business relations of the parties, the acts and motives of the defendant, and the injuries of the plaintiff, were material to the issues to be determined at the trial. There was no relaxation of the rules of evidence in these respects that was unjust to the defendant. The questions of probable cause and of his faith or malice in making the charge, were more or less to be determined from the occurrences disclosed by a complete history tif what pertained to the transaction.
There seem to be no very stringent and artificial rules in regard to actions for malicious prosecution. It is held that the prosecution complained of must have been ended and determined in the plaintiff’s favor. But when the oppression or fraud of the prosecutor prevent the plaintiff from making out his defense, this restriction ceases to be of effect (Burt v. Place, 4 Wend. 591).
The defendant claims that his exceptions taken during a very protracted trial, eighty in number, present *52 manifest and manifold errors of law, which entitle him to a reversal of the judgment, and asks that the court consider them all. In doing this an embarrassment arises from the case not showing that any ground of objection was stated for very many of them. The most careful consideration of the evidence will not always enable an appellate court to divine what was the ground of objection where none is stated; and to reverse a judgment on grounds of objection not stated at the tria!, where the difficulty might have been remedied, hardly accords with the due administration of justice. In support of the allegation in the complaint, that the charge against, and the arrest of, the plaintiff was published in several newspapers, notices in two newspapers were read at the trial, to which the defendant objected, stating no ground. If he had stated that the plaintiff had already proved the publication or that it was immaterial or any other ground of objection, directing the attention of the court to it, there might have arisen no occasion for an exception, or if there did, it would have been entitled to more consideration. The judge stated that he allowed the publication to be read, to show that notice had been taken in the public papers of the criminal charge against the plaintiff, though a good deal that was spread out in them was entirely immaterial. It does not appear that; the contents of these notices tended to prejudice the defendant with the jury.
There were several exceptions taken by the defendant to evidence in reference to the present and former condition of the plaintiff as to health and social relations. . The defendant introduced evidence tending to prove that the plaintiff’s health was impaired by a chronic difficulty before his arrest, and urged that the plaintiff falsely attempted to induce the jury to believe that it was impaired by the arrest. The defendant’s objections to this part of the testimony on the plaintiff’s part were on the ground of incompetency, without *53 specifically stating the ground upon which the testimony was incompetent. The investigation as to whether the plaintiff suffered from a depressed state of body and mind after the arrest, and if that state was occasioned by the arrest, is not necessarily one upon which experts are alone competent to speak. There are phases mental and physical of the human economy, concerning which persons of ordinary intellect are competent to testify. The present was not an inquiry as to whether the plaintiff was compos mentis, and did not call for the strict application of the rules pertinent to such an inquiry, or to the investigation of testamentary capacity. The impression of a layman formed at the time, as to whether the act Le testifies he observed was rational or irrational, may sometimes be given in evidence (Hewlett v. Wood, 55 N. Y. 634).
The court ruled that these witnesses, laymen, could only state the acts the plaintiff performed, and that the jury could determine. When in answer to the question, “How did he act?” the witness volunteered statements irresponsive to the question, the defendant should have moved to strike them out, if he deemed them prejudicial. In the instance previous to the ruling of the court, where the form of the question embraced what was perhaps objectionable, it will be seen that the response was confined to what the witness observed.
The consideration of the numerous exceptions in this case, does not lead to the conclusion, that a reversal of this judgment is called for.
The judgment and order appealed from should be affirmed, with costs.
Sedgwick, J., concurred.