## JOHNSON v. MILLER ET AL.

1. **Malicious Prosecution:** ACTION AGAINST CONSPIRATORS FOR: EVIDENCE: BURDEN OF PROOF. Where the action was against defendants as conspirators for a malicious prosecution, the burden was upon plaintiff to establish the conspiracy, and also that the prosecution was begun without probable cause.

2. ———: ———: ———: ERROR IN ADMITTING: NOT CURED BY INSTRUCTIONS. On the trial of such action, it was error to admit evidence of damage to plaintiff's property and of threats against his person, when there was nothing to connect defendants therewith; and the error was not cured by the court's instructing the jury that they should disregard such evidence, unless they should find that there was testimony connecting defendants with such acts.

3. ———: ———: ———: DECLARATIONS OF ONE OF THE ALLEGED CONSPIRATORS: ADMISSIBILITY OF. On the trial of such action, before the declarations of one of the conspirators can be admitted as against the others, the conspiracy must be established, or the declarations must tend to establish it, and it must appear to have been made during the existence of the conspiracy and in aid of the common design. *State v. Westfall*, 49 Iowa, 328, cited.

4. ———: ———: ———: ACTS OF STRANGER TO CONSPIRACY. On the trial of such action, the acts of one not charged with the conspiracy are immaterial, and evidence thereof is not admissible.

5. ———: ———: ———: ANTI-HORSE-THIEF ASSOCIATION: LIABILITY OF MEMBERS. On the trial of such case, it was competent to show that the defendants were members of an anti-horse-thief association, and that the association voted to prosecute plaintiff, and that it voted money for that purpose, and assessed its members to raise the money; but the defendants would not be liable for what the association did, merely because they were members of it, and contributed money to the common purpose. Each member of such an association is liable only for the wrongs done by himself personally, and, before he can be held liable for the wrongful act of the association, it must be shown, either that he voted in favor of the unlawful act, or intentionally aided or contributed money in furtherance of that act.

6. **Evidence:** CONSTITUTION AND BY-LAWS OF ASSOCIATION: LEGALITY OF PURPOSE: QUESTION FOR COURT. Where the constitution and by-laws of a voluntary association were introduced in evidence, in which the objects of the association were set forth, it was for the court to determine therefrom whether those objects were lawful or not, and to submit such question to the jury was error.

Johnson v. Miller et al.

7. **Malicious Prosecution:** PROBABLE CAUSE: MIXED QUESTION OF LAW AND FACT: INSTRUCTIONS. In actions for malicious prosecution, whether or not there was probable cause for the prosecution is a mixed question of law and fact. When the facts are admitted, or have been found by the jury, the law declares whether there was probable cause or not. In such cases, where the evidence is conflicting, and the facts which it tends to prove are numerous, it is exceedingly important that the instructions as to what constitutes probable cause should be clear, definite and certain; and it is the better plan for the court to group together in the instructions the facts which the evidence tends to prove, and then instruct the jury that, if they find that such facts have been established, they must find that there was or was not probable cause. See cases cited in opinion.

8. ———: LIABILITY FOR CONTINUANCE OF. Where parties are instrumental in maliciously causing a criminal prosecution to be commenced, they cannot escape liability for its continuance by the state after the first indictment is quashed.

9. **Larceny:** EVIDENCE: POSSESSION OF STOLEN PROPERTY. The unexplained possession of stolen property shortly after the larceny is evidence of the guilt of the possessor.

10. **Malicious Prosecution:** EVIDENCE OF PROBABLE CAUSE: DISAGREEMENT OF JURY IS PRIMA FACIE. The fact of the disagreement of the jury upon the trial of a criminal prosecution is *prima facie* evidence of probable cause for the prosecution; (and so is a conviction before a justice of the peace—*Moffatt v. Fisher*, 47 Iowa, 473, and the finding by the grand jury of an indictment, and hesitancy of the trial jury in acquitting;) and in an action for malicious prosecution the record of the trial of the criminal cause is admissible to show the disagreement of the jury, as tending to establish probable cause, and to negative the charge of malice. See cases cited in opinion.

11. ———: ON CHARGE OF LARCENY: OWNERSHIP OF STOLEN PROPERTY: EVIDENCE. In an action for malicious prosecution on the charge of larceny, the question whether the defendant in the prosecution was guilty as charged—that is, whether the property alleged to have been stolen belonged to the alleged owner, was material; and, as bearing on this question, the record of a former action between the plaintiff and one of the defendants in this action was admissible, in favor of such defendant at least, together with other evidence, to show that the property was adjudged to belong to the person alleged in the indictment.

*Appeal from Black Hawk District Court.*

FRIDAY, APRIL 25.

ACTION FOR MALICIOUS PROSECUTION. It is stated in the

petition that the defendants caused the plaintiff to be indicted for the crime of grand larceny, and that, in so doing, they acted maliciously and without probable cause, and that they conspired together for the purpose aforesaid, and that said plaintiff has been acquitted of said charge. The defendants pleaded a general denial. Trial by jury, judgment for the plaintiff, and defendants appeal.

*Horace Boies* and *Hubbard, Clark & Deacon*, for appellants.

*C. E. Wheeler* and *Piatt & Carr*, for appellee.

SEEVERS, J.—I. The burden was on the plaintiff to establish the conspiracy charged, and that the criminal proceeding
1. MALICIOUS prosecution: action against conspirators: evidence: burden of proof.
was commenced without probable cause. The plaintiff offered evidence showing that his barn and contents were burned shortly after he was acquitted of the criminal charge. This evidence was objected to as immaterial, but the objection was overruled and the evidence admitted. There were two indictments
2. —: —: —: error in admitting: not cured by instructions.
against the plaintiff. The first one was quashed, and it was generally known that a motion to quash would be made. A few days prior to the convening of court, there was found, early in the morning, near the plaintiff's residence, a letter addressed to him, with which was a rope. The contents of the letter, as testified to by the plaintiff, were as follows:: "In view of the present indictment we understand that you are under, we understand that you calculate to have the indictment set aside. We advise you to appear and be tried under the indictment with the defect, if any exists, or take the lamented Greeley's advice and go west, or take this. "WE THE COMMITTEE."

The plaintiff offered evidence of the finding and contents of the letter. To this the defendants objected on the ground of incompetency, and because it was not shown that any of the

defendants were connected with the letter. The objections were overruled.

We have examined the large abstract with care, and have failed to find any evidence tending to show that the barn was not accidentally burned, or, if not, that any of the defendants had connection therewith, or are in any respect responsible therefor. We have also been unable to find any evidence tending to show that the letter was written by the defendants, or any of them, or that they ever had knowledge of its existence. This being so, we think the foregoing evidence should have been excluded, and we can readily see and understand that the defendants were greatly prejudiced by its introduction.

The defendants were members of an "anti-horse-thief association," and it is claimed that the association directed or caused the criminal proceedings to be commenced against the plaintiff, and that the defendants advised and directly sanctioned what the association did by, among other things, contributing money to aid the prosecution. Conceding this to be so, there is no evidence tending to show that the association had anything to do with burning the barn or writing the letter. The defendants asked the court to instruct the jury to disregard the foregoing evidence. This was refused, and the jury were instructed that they should disregard it, "unless you find there is testimony which connects (the defendants) in some way with such acts. Mere suspicion or supposition is not sufficient." It is insisted by counsel for the appellees that the error in the admission of the evidence aforesaid was cured by the instruction given the jury. But it is error to give an instruction where there is no evidence to support it. This has been repeatedly ruled, and we do not understand counsel to claim otherwise.

Benjamin Yost testified that at the term the indictment was found one of the defendants (but which one he was un-

3. ——: ——; able to state) said "that, if they could not get rid of
——: declarations of him (plaintiff) no other way, they would burn
one of the alleged conspirators: admissibility of. him out." It is said that this evidence warranted the court in giving the instruction above stated. The evidence is indefinite and uncertain, and we think, if the defendants were on trial for burning the barn, the evidence would have been inadmissible against any one of them, because it failed to identify the defendant who spoke the alleged words; and it would not have been admissible as evidence against all of the defendants, unless a conspiracy to burn the barn had been established; and the rule must be the same in this case. There is no evidence tending to show a conspiracy to burn the barn.

John Hines testified that he heard David Fall, one of the defendants, say, at the time at which the indictment was found, "we will convict Johnson sure, or, if we do not convict him, we will drive him out of the country." Who Fall included when he said "we," the witness was unable to state. It is exceedingly doubtful whether what Fall said is binding on any one but himself; but, conceding that the defendants are bound thereby, we do not think that the presumption should be indulged that the plaintiff was to be driven out of the country by the perpetration of two serious criminal acts. It cannot be presumed that Fall intended to accomplish the desired end by unlawful acts. The evidence, therefore, was insufficient to connect the defendants with either the burning or the writing of the letter. The court, therefore, erred in the admission of the evidence, and in instructing the jury as above stated.

II. John Foreman is one of the defendants, and the plaintiff, when on the stand as a witness, testified that this case was twice tried in Benton county, and that said Foreman testified on said trials, or one of them, "that they had met—this organization had met—these defendants and the balance of them—and they had determined to prosecute, whether anybody told them or not;" that is, as we un-

THE SAME.

derstand, whether or not the district attorney advised the commencement of the criminal proceedings.    This evidence was objected to by all of the defendants except Foreman, but the objection was overruled.    The evidence was admissible against Foreman as an admission.    It stands upon the same footing as an admission out of court.    But it was not binding on the defendants, unless the conspiracy had been established or the admission tended to so prove.    The admission was made by Foreman long after the criminal proceeding was at an end. The conviction of the plaintiff of the criminal charge was the object of the conspiracy.    This had failed, and the conspiracy had ceased to exist when the object intended to be accomplished had failed.    Conceding that Foreman and the defendants were conspirators, we understand that the admission of one, to be binding on the others, must be made during the existence of the conspiracy, and in aid of the common design.    In 3 Greenleaf Ev., § 94, it is said:  "The evidence of what was said and done by the other conspirators must be limited to their acts and declarations made and done while the conspiracy was pending, and in furtherance of the design; what was said or done by them before or afterwards not being within the principle of admissibility."    See also *The State v. Westfall*, 49 Iowa, 328.    We think the court erred in the admission of the evidence aforesaid.

III.    William Hamson, who is not a defendant, was called as a witness for the defendants, and on cross-examination was permitted to testify, against their objections, that he was a member of the association, but became such after the indictment was found, and that he had contributed money as dues to the association during the pending of the indictment.    This evidence was not directed in reply to or in explanation of the evidence of the witness in chief, and was inadmissible, because the witness was not charged with conspiracy, and the fact that he was a member of the association, and contributed money in furtherance of the objects of the organization, should not prejudice the de-

4. ——: ——: ——: acts of stranger to conspiracy.

fendants. What the witness did bound no one but himself.

IV. G. W. Miller, one of the defendants, was called as a witness by the plaintiff, and testified that he was present at a meeting of the association, and he thereupon was asked, and answered, the following questions: "Do you recollect of a vote being taken in a meeting of that organization to prosecute Mr. Johnson for selling Mr. Foreman's calves?" "Yes, I think I do." "Do you know of money being voted for that purpose and the members assessed to raise the money?" "Yes sir." This evidence was objected to "because the action of the organization is not that of the defendants;" but the objection was overruled.

*5. ——: ——: anti-horse-thief association: liability of members of.*

The association was not incorporated, but it may be said to be recognized by or founded in accordance with a statute. Code, § 1091. It cannot, therefore, be regarded as unlawful, unless organized for such a purpose. But, if lawfully organized, its powers may have been used for an unlawful purpose. The association is not a party to this action, but certain members are, and the question is, to what extent are the latter bound by the acts of the association? As it was not incorporated, the association must be regarded as a partnership or association of persons for the accomplishment of a common purpose, which, for the purpose of the argument, must be conceded to be the prosecution of the plaintiff on the criminal charge. Now, if the defendants aided and abetted in the prosecution by the contribution of money for that special purpose, or otherwise, then we think they are responsible for the consequences. If the prosecution was unlawful, they are liable. But the defendants insist that the evidence fails to show that they or any of them contributed money in aid of such prosecution. They say that the evidence only shows that they contributed money to the objects of the association as dues provided for in the by-laws, and that it does not appear that they directed that the money so contributed should be used to prosecute the plaintiff. We

have examined the whole evidence of Miller with care, and think, when taken all together, that it is shown that the portion objected to as above was admissible, because it had some tendency to show that the defendants contributed money for the purpose of the prosecution of the plaintiff. But the defendants are not liable in our opinion for what the association did, merely because they were members, and contributed money to effectuate the common purpose. It must be presumed, in the absence of any showing to the contrary, that such contributions were made for lawful, and not for unlawful, purposes. It must be shown that they either voted in favor of the action of the association, or intentionally aided or contributed money in furtherance of the unlawful act. Each member of the association is liable only for the torts and wrongs he did, or aided in doing, as above stated. Now, the mere fact that the defendants contributed money to the association, and that it was expended in the prosecution of the plaintiff, is not sufficient, unless they participated in the action of the association in making such expenditure.

In view of a re-trial, we have deemed it not improper to say this much, but we deem it unnecessary, and possibly improper, to say whether there is sufficient evidence that the defendants participated in the action of the association so as to be bound thereby, because the evidence may not be the same on such re-trial. For the same reason, we decline to say whether in our opinion a conspiracy has been established, or whether evidence has been introduced which so tends.

V. The court instructed the jury that, " On the contrary, if you find that the association was organized for the unlawful purpose of taking the law into their own

6. EVIDENCE: constitution and by-laws of association: legality of purpose: question for court.

hands, outside of the civil authorities, their acts and organization are unlawful, etc." The objects of the association are stated in what is called a constitution and by-laws, which were introduced in evidence. As there was not and cannot be any controversy what facts were established by the constitution and by-laws,

it was for the court to determine therefrom whether the association was organized for an unlawful purpose. The court, therefore, erred in submitting this question to the jury.

VI. Although the association may have been organized for a lawful purpose, the members thereof, including the defendants, may have acted unlawfully, and therefore rendered themselves liable in this action. This depends largely on the question whether there was probable cause for the criminal prosecution. It is urged that the evidence does not sustain the finding of the jury in this respect, but we are not prepared to say that we can, under the established rule, set aside the verdict.

7. MALICIOUS prosecution: probable cause: mixed question of law and fact: instructions.

The court refused certain instructions asked by the defendants as to what facts constituted probable cause, and in so doing it is claimed that the court erred. In these instructions were grouped facts which the defendants claim the evidence tended to establish, and, if the jury so found, then it is insisted that the plaintiff failed to establish that there was not probable cause. We incline to think that the instructions asked and refused were warranted by the evidence. The court correctly gave a general instruction, which would be applicable in any case for malicious prosecution, and also, in another instruction, grouped together some of the facts stated in the instructions refused, but omitted thereform at least one material fact. The criminal charge against the plaintiff was the stealing of certain calves, the property of Foreman. There was evidence tending to show that the plaintiff paid or gave his note to foreman for the value of the calves prior to the finding of the indictment. In grouping the facts, this circumstance was omitted.

Without determining whether there should be a reversal because of the refusal, under the circumstances, to give the instructions asked, we deem it proper, in view of a re-trial, to say that, in actions of malicious prosecution, when the evidence is conflicting, and when the facts it tends to prove are numerous, it is exceedingly important that the instructions

in relation to what constitutes probable cause should be clear, definite and certain. It is true, we apprehend, that what constitutes probable cause is a mixed question of law and fact. When the facts are admitted, or have been found by the jury, the law declares whether there was probable cause or not. We think it is important, and the better way, for the court to group together in the instructions the facts which the evidence tends to prove, and then to instruct the jury, if they find that such facts have been established, that they must find that there was or was not probable cause. *Owen v. Owen*, 22 Iowa, 270; *Shaul v. Brown*, 28 Id., 37.

VII. The first indictment was, as has been said, quashed, and the cause was resubmitted to the grand jury and another

8. ——: lia-bility for continuance of.

indictment found. As it does not appear that the defendants or any of them had anything to do with such resubmission, it may be that it should be presumed that it was done by the court; and this the defendants claim is the fact. It is said that the defendants should not be held responsible for the continuance of the prosecution, because they could not dismiss it. Instructions asked embodying this view were refused, as we think, correctly. Conceding that the defendants were instrumental in causing the criminal action to be commenced, we think they are liable for its continuance. *Bacon v. Towne*, 4 Cush., 217. It may be true that the prosecuting officer declined to dismiss such proceeding under the belief that the plaintiff was guilty. But such belief was, in all probability, engendered by information derived from the defendants.

VIII. There was evidence tending to show that the plaintiff had possession of the property shortly after the alleged

9. LARCENY: evidence: possession of stolen property.

larceny; and the defendants asked the court to instruct the jury that such possession, unexplained, was evidence of guilt. This instruction was refused. It should have been given. It has been so ruled by this court in several cases.

IX. As has been said, the plaintiff was twice tried on the

criminal charge. On the first trial the jury were unable to agree on a verdict, and were discharged. The defendants sought to introduce in evidence the record of such trial, which showed that the jury retired to consider as to their verdict on the fifth day of May, and, being unable to agree, they were discharged the next day. Upon the objection of the plaintiff, this evidence was excluded. It is insisted by counsel for the defendants that the evidence sought to be introduced was evidence of probable cause, and therefore the court erred in excluding it.

*10. MALICIOUS prosecution: evidence of probable cause: disagreement of jury is prima facie.*

It has been held that a conviction before a justice of the peace on a criminal charge, and an acquittal upon appeal, is conclusive evidence of probable cause. *Whitney v. Peckham*, 15, Mass., 243; *Witham v. Gowen*, 14 Me., 362. In *Bacon v. Towne*, 4 Cush., 217, it is said that the authority of the first case has been doubted in *Burt v. Place*, 4 Wend., 591, and that, if the conviction before the justice is regarded "as evidence of probable cause, we think it is *prima facie* only, and not conclusive;" and such is the rule in this state. *Moffatt v. Fisher*, 47 Iowa, 473. In *Garrard v. Willet*, 4 J. J. Marsh, 628, it was held "that the finding by the grand jury (of an indictment) is *prima facie* evidence of probable cause." In *Smith v. McDonald*, 3 Espinasse, 7, it is said that, if the evidence on the trial of the criminal charge is such as to cause the jury to hesitate as to an acquittal, it is evidence of probable cause.

In the case at bar, the jury were unable to agree as to the innocence or guilt of the defendant. It followed, of course, that the jury, or some of them, must have believed the plaintiff to be guilty. The fact that he was acquitted by another jury cannot affect the result which must necessarily follow because the first jury failed to acquit. We think the evidence offered was admissible, because it tended to show probable cause. It was not conclusive, and, like any other *prima facie* evidence, was subject to be explained. The question is not

whether the plaintiff was guilty, but whether the defendants had reasonable cause to so believe. If the finding of an indictment is evidence of probable cause, or the evidence on the trial of the criminal charge is such as to cause the jury to hesitate is evidence of probable cause, it seems to us that the inability of the jury to agree must have the same effect. The evidence offered was, therefore, admissible.

X. The crime with which the plaintiff was charged was the stealing of certain calves, the property of John Foreman. There was evidence tending to show that the plaintiff sold the calves to Potter, to whom the plaintiff gave his promissory note in payment for the calves, which note Potter gave Foreman. The latter brought suit on the note against the plaintiff, and the defendants offered evidence tending to show that the original papers in said action were lost, and they offered in evidence a certified copy of the record, showing that Foreman had recovered in said action. They also offered to introduce evidence tending to show that the only and sole issue in said action was whether the calves, in payment for which the note was given, were the property of Foreman. This evidence was objected to as being incompetent and immaterial, and the objection was sustained. Foreman was plaintiff, and the present plaintiff defendant, in the action on the note, and the defendant in that action is plaintiff, and Foreman is one of the defendants, in this action. If the calves were not the property of Foreman, then the plaintiff was not guilty of the crime charged against him. It is a material issue in this case whether the plaintiff is guilty as charged; for we apprehend that it is true that, if the jury should so find, such fact would, at least, tend to reduce the damages which the plaintiff might otherwise be entitled to recover. We think, as the issue in the two cases is substantially the same, that, as between the plaintiff and Foreman, the evidence was admissible. It is not essential that the judgment in the former action should have been specially pleaded. 1 Greenleaf's

*11. ———: on charge of larceny: ownership of stolen property: evidence.*

Ev., §§ 527-528, 531. We are not called on to determine whether the judgment is conclusive as between the plaintiff and Foreman, nor whether it was admissible in favor of the other defendants. The errors not considered are either of a minor character, or such as will not in all probability affect the result, if another trial is had.

REVERSED.