## ALLISON v. BRYAN.

No. 4383.   Opinion Filed May 18. 1915.

Rehearing Denied September 7, 1915.

(151 Pac. 610.)

1. **MALICIOUS PROSECUTION—Actions—Evidence.** In an action for malicious prosecution, evidence of the previous relations of the parties, which led up to the transaction which caused the prosecution to be instituted, is properly admissible, if it tends to throw any light upon the conduct of the parties, or either of them, whereby the jury might judge the motives that actuated them.

2. **TRIAL—Instructions—Consideration.** The instructions of the court should be considered as a whole and in their entirety, and no particular paragraph thereof should be singled out and

given an interpretation which some other paragraph clearly shows was not intended to be placed upon it.

3. . **MALICIOUS PROSECUTION—Actions—Defenses.** In an action for malicious prosecution, the burden of proof is upon the plaintiff to prove want of probable cause, and where the uncontroverted evidence shows that the prosecutor laid all the material facts within his knowledge before a competent attorney, and acted in good faith, upon the advice given, he is exonerated from all liability; but if there is any evidence reasonably tending to prove that the prosecutor instigated the proceedings with a view of gaining some private advantage, or did not give the attorney a full and fair statement of all the material facts in his knowledge, then the case should be submitted to the jury for their determination.

(Syllabus by Mathews, C.)

*Error from District Court, Cleveland County;*
*Tom D. McKeown, Assigned Judge.*

Action by Anna Bryan against Kenner W. Allison. Judgment for plaintiff, and defendant brings error. Affirmed.

*N. E. Sharp* and *Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*S. A. Horton,* for defendant in error.

Opinion by MATHEWS, C.  This is an action to recover damages for malicious prosecution, which grew out of a criminal prosecution instigated by plaintiff in error against defendant in error in the justice of the peace court of Cleveland county, Okla.  It appears that this action is the echo of the case of *Bryan v. Allison,* 26 Okla. 520, 109 Pac. 934, 30 L. R. A. (N. S.) 146, 138 Am. St. Rep. 988, which was a suit for the custody of a child, which defendant in error was accused of kidnapping, from which occurrence the instant case arose, upon the trial of which in the district court of Cleveland county defendant in error recovered a judgment for $2,000.

In this decision the parties hereto will be referred to as they were designated in the trial court.  The de-

fendant asks for a reversal upon three propositions, set out as follows:

"(1) The court permitted incompetent evidence to be introduced in said cause over the objection of defendant, which evidence was extremely prejudicial to defendant.

"(2) The court erred in giving instruction No. 8, thereby specially designating the manner in which such evidence should be applied by the jury in their consideration of said cause.

"(3) The court erred in overruling the motion of defendant for an instructed verdict."

Extending through a series of years there has been carried on a vexatious and bitter contest between plaintiff and defendant over the care and custody of a child, the fruit of a liaison between plaintiff and defendant, which had its beginning in the town of Walker, Mo. During all this time defendant was a farmer and stockman, residing with his wife near Lexington, Cleveland county, Okla., and was engaged in buying and shipping stock to the Kansas City market. While at Walker, Mo., for the purpose of buying stock for shipment, he became acquainted with defendant, who was then a widow, having been divorced from her husband. Illicit relations between them soon developed, although they differ widely in their testimony as to the time and manner of the commencement of the same. On the 21st day of July, 1902, the child was born, and there is no contention but that defendant was its father, so acknowledged by him. The parties continued after the birth of the child to reside together, maintaining a home in Kansas City, until in May, 1903, when it seems their illicit relations ceased.

The defendant in 1904, with the consent of the plaintiff, took the child to his home in Cleveland county,

and with the consent of his wife the child was received into the home as one of the family and as the acknowledged child of defendant. An effort was made to adopt the child under the laws of Missouri, and what is known as a "deed of adoption" was procured from some court in Missouri. The child was afterwards adopted by defendant through a proceeding for that purpose in the probate court of Cleveland county. Whether or not either of these proceedings was legal and binding upon plaintiff the evidence does not disclose, and as far as the proceedings in this case are concerned they have but little bearing.

While the child was at the home of defendant on the 2d day of February, 1912, and when the defendant was absent the plaintiff went to his home, and took the child away, and carried it into the Chickasaw Nation. She was immediately apprehended, and by officers brought to Purcell with the child, where defendant met her, and it was there agreed, through negotiations carried on by attorneys representing each of the parties, that one Markham should take charge of the child until its legal status as to which of said parties was entitled to its possession could be settled, and plaintiff was released from the custody of the officers on that date. In a few days Markham delivered the child to the defendant, for the reason that he did not desire to keep it longer.

On the 12th day of March defendant made complaint against plaintiff for the taking of the child from his custody, and on the same day, whether before or afterwards the evidence fails to disclose, plaintiff instituted *habeas corpus* proceedings against defendant for the custody of the child, which were decided adversely to her contention in the case of *Allison v. Bryan, supra.* On the prelimi-

nary hearing on the 23d of March, 1912, she was discharged. On the trial of the case in the district court the presiding judge permitted plaintiff, over the objection of defendant, to give a detailed statement of the relations between plaintiff and defendant from their inception. Therein she testified, in substance, that she first met defendant in Walker, Mo., and that he represented himself to be an unmarried man, and made love to her, and proposed marriage, and she accepted; that he said he lived in Kansas City, and arranged that she should meet him there to be married; that at his request she went to Kansas City, and the defendant met her at the station, and from there took her to a place where a marriage ceremony was performed by a man who defendant told her was named Cole, two women being present at the ceremony, and that Cole held a paper in his hand while he performed the ceremony; that they went from there to a rooming house and stayed about a week, when she returned to Walker and stayed until January next, and while there was visited by defendant, and afterwards went to Kansas City, where she lived with defendant as his wife; that the child was born on the 21st day of July, 1902, and that the defendant was present at its birth, and that they continued to live as man and wife until May, 1903, when she learned that he was a married man and had deceived her.

Defendant vigorously attacks this testimony, and insists that its admission was clearly incompetent and prejudicial, and contends that, viewing it from the light that the jury accepted it as true, it establishes that the defendant, a married man, imposed upon the innocence of a confiding woman, thereby winning her affection, and inveigled her into a mock marriage, causing her to be-

come the mother of a bastard child. In attacking this testimony, defendant states that plaintiff has made out her case when she has proven her arrest and imprisonment, and her discharge therefrom, and the damages sustained thereby, and probably malice on the part of defendant.

If the jury viewed the evidence in the light of defendant's contention, and accepted it as true, which was within their province to do, it is plainly apparent that it was calculated to, and is highly probable that it did, make a grave impression on them, and was given great weight and importance in their deliberations, and it must have been so intended by plaintiff to have that effect when it was offered. But merely that certain evidence is of grave import and fraught with serious consequences against one of the litigants is not a test as to its competency and admissibility. It is inconceivable how the jury could have intelligently understood the facts in the case with sufficient comprehension to arrive at a correct conclusion without being apprised of the facts that led up to the taking of the child from the possession of defendant.

The court gave the jury the following instruction, and, as defendant reserved no exception thereto, he must have then accepted the same as a correct statement of the law:

"No. 6. The jury are instructed that if you find and believe from the evidence in this case that the plaintiff was the mother and defendant the father of the child born to them out of wedlock, and if you further find and believe from the evidence that prior to the 1st day of February, 1906, the defendant had taken the minor child into his home with the consent of his wife, and had acknowledged the child to be his child, and had treated it

as a legitimate child, then you are instructed that as a, matter of law it became a legitimate child, and the defendant was entitled to the legal custody of the child, and that the plaintiff would have the right to visit and see the child, but that she would not have the right to maliciously, forcibly, or fraudulently take and entice away the child from the defendant, with the intent to detain and conceal the child from the defendant; and if you find and believe from the evidence that the plaintiff willfully, forcibly, or fraudulently took or enticed away the child, with intent to detain and conceal it from the defendant, then you will find for the defendant."

Without this or similar evidence the jury could not have known the parentage of the child and that it was born out of wedlock, and the basis of the plaintiff's claim that she was entitled to the custody of the child, and we think that its admission was proper for that purpose, and further was competent to show the real situation between the parties, to enable the jury to judge whether or not the plaintiff was guilty of maliciously taking the child from the possession of defendant, and whether or not the defendant instituted criminal proceedings against plaintiff maliciously and without probable cause.

The court gave the jury the following instruction:

"No. 5. The jury are instructed that during the month of February, 1906, the following statute was in force in the Territory of Oklahoma, to wit: 'Whoever maliciously, forcibly or fraudulently takes or entices away any child under the age of twelve years, with intent to detain and conceal such child from its parent, guardian or other person having the lawful charge of such child is punishable by imprisonment in the state prison not exceeding ten years, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

This is the statute under which plaintiff was prosecuted, and from whence arose this action, and in considering this instruction it became material for the jury to determine whether or not the plaintiff had violated the statute, and had maliciously taken the child from the possession of defendant. Then it became permissible on her part to show the prior relationship of the parties, and the entire circumstances that led up to her taking the child, and her theory by which she justified her conduct in so doing.

Defendant complains of the giving of the following instruction:

"No. 8. The jury are instructed that the testimony of the previous relations of the parties prior to the birth of the child in question is admitted in this case for their consideration in determining the parentage of the child, and to throw whatever light it may upon the question of whether the prosecution was instituted maliciously and in determining the injury to the plaintiff, if any, in determining the [amount] of damages, and for no other purposes."

The proposition here discussed is closely related to those discussed in the preceding paragraph, and the evidence which we there decided was clearly admissible was by the court properly limited in its consideration by the jury to the scope set out in this instruction; but the most serious contentions raised by the defendant in his brief, and the nearest approach to error in the entire record, is the point raised in his objection to the last clause in this instruction, wherein the court tells the jury that the previous relations of the parties are to be considered "in determining the injury to plaintiff, if any, in determining the amount of damages." Against this clause of this instruction defendant urges that this suit is not main-

tained to recover damages for a fraud perpetrated upon her at the time of the marriage, nor for the seduction, but for injuries sustained from a malicious prosecution and false arrest. If the vice appeared in this instruction as contends defendant, then it would be a most serious one, and this cause would have to be reversed, although otherwise the record is singularly free from error.

The instructions of the court should be considered as a whole and in their entirety, and no one instruction should be singled out and given an interpretation without looking to other paragraphs thereof. Instruction No. 9 is as follows:

"No. 9. The jury are instructed that, if you find from the evidence in this case that the plaintiff is entitled to recover, then in estimating the plaintiff's damages, if any, you may take into consideration the fact of the imprisonment of the plaintiff, if you find she was imprisoned, and you may also consider what amount, if any, the plaintiff was compelled to pay as counsel fee in defense of the prosecution, not to exceed the sum of $50, and you may take into consideration the effect of such prosecution and imprisonment upon the plaintiff as to humiliation and mental suffering, if any, directly caused thereby, and you should allow her as damages such a sum as in the exercise of a sound discretion you may believe from all the facts and circumstances given in evidence will be a fair and just cash compensation to her for the injuries so sustained, if any, not to exceed the sum of $10,050."

It is plainly apparent that in instruction No. 9 the court instructed the jury upon the proper element of damage, and told them in this section specifically what could be considered by them as elements of damage. He did not tell them that they should consider the elements

he had specified in this paragraph of the instructions in connection with the preceding paragraph, and it is evident that the court did not intend to charge them in paragraph No. 8 as to what they should consider as an element of damage, but did charge them therein that they should consider the previous relations of the parties "in determining the amount of damage." That the defendant imposed upon the plaintiff in representing himself to be a single man, inveigled her into a mock marriage, and thereby induced her to live with him as his wife, from the fruits of which came a bastard child, could not be considered in this case as one of the elements of damage, because this was a suit for a malicious prosecution; but it was entirely proper that these facts, if proven, should be considered by the jury in determining the amount of damage, if they had theretofore decided to allow damage for the malicious prosecution and false imprisonment. There is no serious contention but that it was competent to show that the child was illegitimate. In fact, the defendant himself would have been compelled to put that fact in evidence, even if the right could have been denied plaintiff. Then, the fact of illegitimacy appearing, it became supremely important on her part that she show that she was not a willful participant in the illicit transactions between herself and defendant, but that she had been beguiled into the same by the wiles of defendant; because, if she cohabited with defendant through a series of years and was the mother of a bastard child, having full knowledge that she was not his lawful wife, the jury might readily and rightfully conclude that it would humiliate and disgrace her but little to incarcerate her in the common jail, and therefore her damages for such a false imprisonment would only be a nominal amount,

while, on the other hand, if she had not yet willfully, surrendered her purity and virtue, it might be impossible. to measure in dollars and cents the humiliation and shame she would experience by being thus imprisoned. ...For these reasons we conclude that the instruction. was proper.

The last proposition of defendant's counsel· is that he was entitled to an instructed verdict, and as basis for this they contend that the defendant, before swearing to the complaint against plaintiff, placed all the facts before Mr. Nicodemus, the county attorney of Cleveland county, and that he advised him that she was guilty of kidnapping, and that, relying upon this advice, he instigated the criminal proceedings. In *El Reno Gas & Electric Co. v. Spurgeon,* 30 Okla. 88, 118 Pac. 397, we find:

"In an action for malicious prosecution, where the uncontroverted evidence shows that the prosecutor, before instituting criminal proceedings against the accused, sought the advice of a regularly licensed and practicing attorney, and thereafter, and before action was taken, also consulted and advised with the county attorney, and placed before said attorney all the facts within his knowledge, or which he could have obtained by the exercise of reasonable diligence and inquiry, concerning the guilt of the accused, and fairly and honestly acted upon the legal advice given, it is error in the trial court to, refuse to, direct the jury to return a verdict for the defendant." *Central Light & Fuel Co. v. Tyron,* 42 Okla. 86, 140 Pac. 1151; *Roby v. Smith et al.,* 40 Okla. 280, 138 Pac. 141...

But (1) did the defendant disclose to the county attorney all the material facts in his knowledge?. and. (2) in instituting the criminal proceedings did the defendant. act in good faith upon the advice of the county attorney.? If. there was no controversy upon these two propositions,

or if it appeared that he did do so, then defendant would have been entitled to the requested instruction; but, to the contrary, we find both of these contentions sharply contested by plaintiff, and the evidence shows such a conflict that neither of the questions could be answered other than by a determination of the jury under proper instructions.

In actions for malicious prosecution, in order for the plaintiff to prevail, it becomes necessary for him to allege and prove: (1) That a prosecution was commenced against plaintiff; (2) that it was instituted or instigated by defendant; (3) that it was malicious; (4) that it was without probable cause; (5) that it has been legally and finally terminated in plaintiff's favor. *Flamm v. Wineland,* 41 Okla. 688, 139 Pac. 961. In this kind of actions there are ordinarily but two controverted. points, the others being generally conceded or easily susceptible of proof, and these are: (1) That the prosecution was malicious, and (2) was without probable cause.

"To constitute malice there must be *malus animus,* denoting that the party who instituted the original proceeding was actuated by wrong motive." (26 Cyc. 48.)

"By a 'want of probable cause' is meant an absence of rational grounds of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious and reasonable man in the belief that the person accused is guilty of the crime charged." (*Davie v. Wisher,* 72 Ill. 262.)

In determining what constitutes probable cause, the question does not hinge upon whether the offense has in fact been committed, nor whether the accused is guilty or innocent, but upon the instigator's belief based upon

reasonable grounds. As before stated, in order for the plaintiff to prevail, both "malice" and "want of probable cause" must be proven. If either are lacking the case must fall.

"Malice will be inferred when the object of the prosecution is to simply enforce the payment of a debt." (*Ross v. Langworthy*, 13 Neb. 492, 14 N. W. 515.)

So, in the instant case, if the defendant had any motive other than a *bona fide* desire to see the law enforced and the plaintiff punished for violating the same when he instituted the prosecution, then evidence tending to show other motives should have been considered by the jury for that purpose. The evidence here is voluminous, tending to show that there was a long drawn out controversy between plaintiff and defendant over the possession of the child, and on the very day of the institution of the criminal proceedings the plaintiff filed a *habeas corpus* action for the possession of the child. It developed that it was necessary to take depositions of various witnesses in the State of Missouri, in order for plaintiff to properly present her claims for the child, and this evidence was of sufficient importance to go to the jury, and it then became the duty of the jury to say whether or not, if they found these facts to be true, they also found that malice actuated the defendant in instigating the prosecution.

What constitutes probable cause is a mixed question of law and fact. *Johnson v. Miller,* 63 Iowa, 529, 17 N. W. 34, 50 Am. Rep. 758. If there is no controversy over the facts, or if the facts are conceded, then it becomes a pure question of law for the court to determine whether there was probable cause or not. It therefore becomes the duty of the court, when evidence has been given to

50—23

prove or disprove the existence of probable cause, to submit to the jury its credibility, and what fact it proves, with instructions that the facts found amount to proof of probable cause, or that they do not. *Johnson v. Miller, supra.*

Want of probable cause is successfully rebutted, if it is shown that the prosecutor submits all the material facts in his knowledge to the county attorney, or any competent attorney, and he acts thereon in good faith. Did the defendant in this case submit to the county attorney all the material facts in his knowledge at the time he instituted the criminal proceedings? He did not inform the county attorney that there was an agreement between him and plaintiff that one Markham was to retain possession of the child until the custody and control could be legally determined between them. It seems he contemplated such an action, while the evidence does not show, yet the same having been commenced on that day, it is very probable that it had already been filed, or that defendant was fully aware that plaintiff intended to file it on that date, and he should have communicated all the facts relative. thereto in his knowledge to the county attorney, which he did not do. It therefore follows, as defendant did not divulge all the facts in his knowledge to the county attorney, that the court did not err in his refusal to instruct the jury to return a verdict for the defendant.

We find that the learned judge who tried this case was eminently fair towards the defendant in all his rulings and in his instructions to the jury, that the case is free from error, and the judgment should be affirmed.

By the Court: It is so ordered.