SUSIE PICKLES, Respondent, v. JOHN ANTON, Appellant.

(189 N. W. 684.)

**Malicious prosecution — action lies for instituting inquisition of lunacy without probable cause.**

1. An action will lie in this state for the malicious prosecution, without probable cause, of a proceeding the object of which is to have a person adjudged insane and committed to the state insane asylum.

Notes.—On action for malicious prosecution for instituting lunacy proceedings, see note in 5 A.L.R. 1097.

On reasonable and probable cause of suspicion as mitigating damages for false imprisonment, see note in 45 L.R.A.(N.S.) 64.

On liability for arrest upon suspicion of insanity, see note in L.R.A.1916C, 230.

**Malicious prosecution — previous relations between parties admissible to show malice.**

2. For the purpose of showing the malice of the defendant in instituting such inquisition of lunacy against the plaintiff, the personal relations previously existing between the parties may be shown.

**Malicious prosecution — evidence as to insanity charge held competent.**

3. Where the charge of insanity, which forms the basis of an action for malicious prosecution, is based upon the alleged destruction of certain property, it is proper to show any facts and circumstances surrounding such destruction which tend to show the reason for the alleged destruction, or which tend to throw any light upon the mental condition of the person who was so charged with having committed such alleged insane act. It is, also, competent to show whether the defendant in making the charge of insanity to the public officials fully and correctly informed such officers of such facts and circumstances.

**Malicious prosecution — probable cause for insanity charge held for jury; $6,000 held not excessive damages.**

4. For reasons stated in the opinion it is *held* that in this case it cannot be said as a matter of law that the defendant had probable cause for instituting the inquisition for lunacy, that the prosecution thereof was not malicious, or that the verdict returned by the jury is excessive.

Opinion filed April 1, 1922.   Rehearing denied September 9, 1922.

Malicious Prosecution, 38 C. J. § 17 p. 392 n. 50; § 21 p. 394 n. 78, 80; § 59 p. 420 n. 67; § 103 p. 451 n. 84; § 177 p. 490 n. 74, 76; § 180 p. 492 n. 88, 89, 90; § 193 p. 502 n. 19; § 197 p. 507 n. 40.

From a judgment of the District Court of Nelson County, *Cooley,* J., defendant appeals.

Affirmed.

*Bangs, Hamilton & Bangs,* for appellant.

The gist of the action is not the sanity or insanity of the plaintiff at the time of her arrest, but whether or not there was probable cause for her arrest, and the burden is always on the plaintiff to prove that the proceedings were instituted without probable cause and maliciously. Shong v. Stinchfield, 183 N. W. 268 (N. D.) ; Griswold v. Griswold, 77 Pac. 672 (Cal.).

The burden of proof is upon the plaintiff to prove both want of probable cause and malice.   Merchant v. Pielke, 10 N. D. 48; Rhoads v. First Nat. Bk. 37 N. D. 421.

Even though it be held that a discharge by the county commissioners

of insanity is evidence of want of probable cause, it is only prima facie evidence, and not conclusive, and does not shift the burden of proof. Hiersche v. Scott (Neb.) 95 N. W. 494; Waring v. Hudspeth (Wash.) 135 Pac. 222; Noblett v. Bartsch (Wash.) 71 Pac. 551.

The burden of proof is upon the plaintiff to prove malice; it is not sufficient that it may be inferred from want of probable cause; actual malice must be proved. Waring v. Hudspeth (Wash.) 135 Pac. 22; Ton v. Stetson (Wash.) 86 Pac. 668; Krause v. Bishop (S. D.) 100 N. W. 434; Malloy v. Chicago, Mil. & S. P. R. Co. (S. D.) 148 N. W. 598.

The burden of proof is upon the plaintiff to prove both want of probable cause and malice. Merchant v. Pielke, 10 N. D. 48; Rhoads v. First Nat. Bank, 37 N. D. 421.

*Cuthbert, Middaugh & Smythe, Frich, Roberts & Burke,* for respondent.

The right to maintain such an action, whether based upon a malicious criminal prosecution or an abuse of civil process, is early recognized in this state in a very able and exhaustive opinion written by Chief Justice Corliss in Kolka v. Jones, 71 N. W. 558, 6 N. D. 461.

It is well settled that the voluntary dismissal of a suit is prima facie evidence of want of probable cause. Wetmore v. Mellinger (Iowa) 14 N. W. 722; Nicholson v. Coghill, 4 Barn. & C. 21; Burhans v. Sanford, 19 Wend. 417; Green v. Cochran, 43 Iowa, 544; Cooley, Torts, side page 185.

Such dismissal, unexplained, is as cogent evidence of want of probable cause as the failure of the prosecutor in a criminal action to make out a sufficient case to satisfy a committing magistrate. And yet it has been repeatedly held that the discharge of the plaintiff in the malicious prosecution action by a committing magistrate is prima facie evidence of want of probable cause. Cooley, Torts, side page 184; Bigelow v. Sickles (Wis.) 49 N. W. 106; Barhight v. Tammany (Pa.) 28 Atl. 135; Brown v. Vittur (La.) 17 South. 193; Smith v. Association (N. C.) 20 S. E. 963; Newell, Mal. Pros. p. 283.

It is necessary not only that there should be ground for believing that there was a cause of action, but also that the person bringing the action should have so believed in good faith. Ball v. Rawles, 93 Cal. 222, 28 Pac. 937; Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574.

49 N. D.—4.

"In an action for malicious prosecution where the facts are disputed and reasonable men might differ upon the conclusions to be drawn therefrom, the question of probable cause is for the jury upon proper instructions." Syllabus by the court, paragraph one, Shong v. Stinchfield, 183 N. W. 268.

This court has heretofore held that malice may be inferred by the jury from want of probable cause. Kolka v. Jones, 6 N. D. 461, 71 N. W. 558, 66 Am. St. Rep. 615.

That probable cause becomes a question of law alone when the facts are not disputed, and then only when the record discloses that the plaintiff acted in the belief that he had probable cause. Kolka v. Jones, supra; Comeford v. Morwood, 34 N. D. 276, 158 N. W. 258.

PER CURIAM: This is an action for the malicious prosecution of an inquisition of lunacy. The complaint alleges, and the evidence shows, that, on or about March 28, 1919, the defendant filed an information, verified by him, with the commissioners of insanity of Walsh county in this state, charging the plaintiff with being an insane person; that a warrant was issued upon such information and the plaintiff arrested and taken into custody; that while in such custody she was imprisoned for one night in the jail of Grand Forks county and for about three days in the jail of Walsh county; that after a full hearing before the commissioners of insanity, the plaintiff was adjudged by said commissioners not to be insane, and was thereupon discharged.

The plaintiff charges that the proceeding before the commissioners of insanity was instituted maliciously, and without reasonable or probable cause, and that by reason thereof the plaintiff was brought into public scandal, infamy, and disgrace and suffered great anxiety and pain of body and mind to her damage in the sum of $20,000. The defendant interposed a general denial to the complaint. The case was tried to a jury and resulted in a verdict in favor of the plaintiff for $6,000, and defendant has appealed from the judgment.

In his brief on this appeal the defendant says: "The issues on this appeal are: Did the defendant have probable cause for swearing out the complaint charging plaintiff with insanity?

"Did the defendant prosecute the action maliciously?

"Is the verdict for $6,000 in favor of the plaintiff excessive?"

The plaintiff started to work for the defendant as his housekeeper in 1898 and continued to do so until 1912. Shortly after plaintiff entered into defendant's employment they commenced to live together for all purposes and intents as husband and wife. Such unlawful cohabitation commenced according to the testimony of the defendant about two weeks after plaintiff entered his employ, and according to the testimony of the plaintiff about one year after she entered his employment. The plaintiff claims that the defendant proposed marriage, and that the relations arose and continued to exist by reason of and on the strength of the promise of marriage. It appears in the record that a prior action was brought by the plaintiff against the defendant for a breach of promise to marry and that she was awarded a verdict in some amount in that action. In 1912 the plaintiff left the defendant and moved to her homestead some miles distant from defendant's farm and has continued to reside there from that time on. Interim 1912 and 1918, however, the defendant continued to visit the plaintiff at her home and their former intimate relations continued. In 1918 the defendant employed one Miss Ella Minden as his housekeeper. In the summer of 1918 the plaintiff came to defendant's house to see him and, according to the testimony of the plaintiff, she at that time entreated him to comply with his promise to marry her; that she at that time was pregnant as a result of her relations with the defendant and informed him of that fact; that she again came to see defendant in the fall of 1918 during the threshing season; that Ella Minden was at that time employed as a cook in the cook car with the threshing outfit; that on this occasion the plaintiff stayed in the house over night; that Miss Minden and her sister slept in the cook car and that the defendant slept part of the time in the cook car and part of the time in the barn. On March 6, 1919 the defendant was married to Miss Minden in Minnesota. He returned to his home in North Dakota on March 26, 1919. On that day the sheriff of Nelson county served summons and complaint on him in the action commenced by the plaintiff for breach of promise to marry. The evidence shows that prior to defendant's marriage the plaintiff sent Miss Minden certain indecent communications. The evidence also shows that when the defendant was on his way home from Minnesota, after his marriage, he was warned by one or two

persons that the plaintiff was watching the trains for his return and that he had better be on his guard as she would likely do him or his wife some harm. On arriving at his home the defendant was served with the papers in the breach of promise suit. After being so served on entering his house he found that certain clothing belonging to his then wife had been thrown into a trunk and slops poured on them; also, that the upholstery in certain chairs and a davenport had been cut, and he was informed by one of his laborers that these acts had been committed by the plaintiff. The defendant thereupon went to see the state's attorney of Nelson county and asked that the defendant be arrested for the acts that she had committed. He admits that in his talk with the state's attorney he said nothing whatever about the relations that had existed between him and the plaintiff throughout the years nor does it appear affirmatively that he informed the state's attorney of the breach of promise suit which had been brought and was then pending. After some discussion it was decided that the defendant should go and file an information before the commissioners of insanity of Walsh county charging the plaintiff with being insane. This he subsequently did. The defendant admits, however, that in presenting the facts to the county judge of Walsh county he said nothing whatever about the relations that previously existed between him and the plaintiff; nor did he say anything about the breach of promise suit which had been brought against him.

In this state it is settled law that an action will lie "for the malicious prosecution without probable cause of a civil suit, although the person of the defendant therein was not arrested or his property interfered with, and although no other special circumstances are shown to exist." Kolka v. Jones, 6 N. D. 461, 66 Am. St. Rep. 615, 71 N. W. 558. Manifestly, greater injury is done and greater wrong committed by the malicious prosecution without probable or reasonable cause of an inquisition of lunacy. The right to maintain an action for the malicious prosecution of such proceeding is generally recognized and unquestionably exists, especially in jurisdictions where the rule announced in Kolka v. Jones, supra, prevails. See, 1 Cooley, Torts, 3d ed. 344; Kellogg v. Cochran, 87 Cal. 192, 12 L.R.A. 104, 25 Pac. 677; Smith v. Nippert, 76 Wis. 86, 20 Am. St. Rep. 26, 44 N. W. 846; Smith v. Nippert, 79 Wis. 135, 48 N. W. 253; Lock

cnour v. Sides, 57 Ind. 360, 26 Am. St. Rep. 58. In this case the court submitted to the jury for determination the questions of malice and probable cause. No exception was taken to any of the instructions, and there is no contention that they were in any manner erroneous. In our opinion it cannot be said as a matter of law either that the plaintiff had no cause of action, or that the verdict is excessive. While not controlling, it is significant that defendant's counsel did not move for a directed verdict. Neither did he move for a new trial on the ground that the jury under the influence of passion or prejudice had awarded excessive damages.

What has been said disposes of what defendant in his brief has denominated as the issues on this appeal. However, in the written brief, and also in the oral argument, reference was made to certain testimony which it is claimed was erroneously admitted. It is contended that the court erred in admitting testimony relating to the previous relations between the parties. It is contended that this evidence was not admissible in this action. We cannot agree with this contention. An action for malicious prosecution can be maintained only where the action or prosecution complained of has been instituted maliciously. In other words, malice is an essential element, and whatever tends to show the motive or intent of the prosecutor in instigating or instituting the proceeding complained of is properly admissible. 19 Am. & Eng. Enc. Law, 695. Hence any evidence tending to show that the proceeding or action complained of was instituted for the purpose of accomplishing a personal or private end is admissible. 19 Am. & Eng. Enc. Law, 695.

26 Cyc. 99 says: "Prior transactions occurring, and the personal relations previously existing between the parties to the present action, and feelings of hostility, enmity, and ill-will formerly subsisting may be shown upon the question of malice." The same rule was announced by this court in Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574. In Allison v. Bryan, 50 Okla. 677, 151 Pac. 610, the supreme court of Oklahoma states the rule thus: "In an action for malicious prosecution, evidence of the previous relations of the parties, which led up to the transaction which caused the prosecution to be instituted, is properly admissible, if it tends to throw any light upon the conduct of the parties, or either of them, whereby the jury might judge the mo-

tives that actuated them." See, also, Franczak v. Plotzki, 178 Ill. App. 279; Shanks v. Robinson, 130 Ind. 479, 30 N. E. 516; Clark v. Folkers, 1 Neb. (Unof.) 96, 95 N. W. 328; Bruington v. Wingate, 55 Iowa, 140, 7 N. W. 478; Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574. We are satisfied that it was entirely proper for the plaintiff to show the prior relations between the parties. It is indeed difficult to understand how the jury could have understood the facts in the case or been in any position to intelligently determine the motive which actuated the defendant in bringing the insanity proceeding unless they were informed of the relations which had existed between the parties before the insanity proceeding was instituted. This disposes of the errors assigned and argued.

In a dissenting opinion, however, it is stated that the "defendant was asked if he had not been too intimate with his wife before marriage;" and was required to answer such question over objection. The record on which the statement in the dissenting opinion is predicated is as follows: The defendant while being cross-examined under the statute testified that the plaintiff came to his place during the threshing season of 1918; that at that time his present wife (Miss Minden) was employed as cook in the cook car with the threshing machine then on the place. That upon this occasion the plaintiff stayed over night.

Q. Didn't she and your present wife have some trouble of whether she (plaintiff) should be permitted to stay in the house?

A. Why I told her she could stay in the house.

Q. And did she stay in the house?

A. Yes.

Q. And you and your present wife slept in the cook car?

A. My present wife did.

Q. And did you sleep there too?

A. That is my business.

Q. I am asking you, didn't you sleep there too?

Mr. Bangs: Objected to as immaterial, incompetent, and irrelevant, and having nothing to do with this case, and improper cross-examination.

By the court: Overruled.

A. My wife and her sister were in the cook car.

Q. My question is, did you sleep there too?

A. Do I have to answer that question?

Mr. Bangs: Has that anything to do with it at all?

The Court: I suppose it is hard to draw the line. He is testifying under the statute on cross-examination.

Mr. Cuthbert: It is to show what aroused this woman to commit the acts she did.

The Court: That is what I supposed. . . .

Q. I am asking you didn't you sleep out there too?

Same objection as set out above, and same ruling thereon.

A. I was in the cook car a while and I was in the barn. I had some blankets up there and I stayed there until pretty near morning.

In connection with this testimony it should be borne in mind that the defendant testified that upon this occasion, when the plaintiff slept in the house, she destroyed (smashed) a large quantity of eggs in the basement and also destroyed some canned fruit. The information for insanity purports to be based upon the alleged acts of the plaintiff in destroying such eggs and fruit in the threshing season in 1918, and the destruction of the clothing and furniture in March, 1919.

The defendant claimed that the insanity proceeding was instituted in good faith, upon the advice of the state's attorney of Nelson county, and by the action of the commissioners of insanity of Walsh county, after a full statement by defendant of the material facts. Manifestly the situation developed by the examination set forth above had a direct bearing upon the question whether the actions of the plaintiff in destroying the eggs were due to insanity or to a fit of anger. The existence of these facts known to the defendant, and concealed by him from the officers, had a direct bearing upon the question of his good faith in making the charge of insanity, and endeavoring to have the plaintiff committed to the insane asylum.

Judgment affirmed.

GRACE, Ch. J., and CHRISTIANSON, BIRDZELL and BRONSON, JJ., concur.

RORINSON, J. (dissenting.)   The lesson in this case is beware of widows.   In the summer of life the plaintiff, a grass widow, with a boy Archie of seven, became the housekeeper of defendant, an industrious and thrifty farmer.   Both were Scotch and their years were nearly the same.   The lonely winter nights were passed in each other's company "till twixt the late and early."   The result was what the French call a marriage of convenience.   During twenty years, with some intermissions, they lived happily together.   Then, as it seems, John found monotony in loving one who was past the age of bearing him an heir.   He quickly wooed and won a young lassie who became his wife.   The result was an action for breach of promise and a judgment against John for nearly $6,000, which he paid as a penance.   But that was not all.   At the time of commencing the suit the new wife was assaulted with several threatening letters of a vile and obscene character.   John's home was invaded and turned into a nuisance.   It was a clear case of malicious mischief and a misdemeanor.   Comp. Laws, § 10,050.   John called Sheriff Peterson, who viewed the damage and testified thus:   The chairs of leather and upholstery were cut in different places with a knife.   The cuts were from a half inch to 4 or 5 inches.   The davenport or lounge was cut in the same manner. The trunk was filled with dirty clothing and slops.   There was a hat box in the closet and someone had done a job in it.   A fur coat was torn and the lining cut.   He said to Anton:   *The woman must be crazy to do such a thing as that.*   Then, as the sheriff testified, John Anton rode with him to the state's attorney and he, the sheriff, told the state's attorney what he had seen in the house.   The conclusion was that she should be arrested on a charge of insanity, though John made the statement that he did not see her do the work and his idea was to have her arrested on a charge of malicious mischief.   But on the charge of insanity she was arrested and imprisoned four days and then discharged by the insanity board.   She herself spoke to William Nash concerning the matter and said:   I might have been a little off, but I was not crazy.   And what she said is probably true.   And it may well be true that after an imprisonment or restraint during four days on a spare diet she was sobered, and that when she appeared before the insanity board her mind was not in the same condition as when she committed the mischief.   Nothing is more certain than that she

did commit the mischief for which she was liable in treble damages and to imprisonment for one year with a fine of $500. To say that she was crazy or "a little off" was the best excuse that could be given for her crime. Assuredly defendant had a right to invoke the protection of the law. He did as the officers of the law advised him. He preferred a charge of insanity when the real cause was malicious mischief. The plaintiff has no reason to complain that on a charge of insanity she was imprisoned four days when on a charge of malicious mischief she might well have been imprisoned for a year. She has no cause of action. Still she obtained a judgment against the defendant for $6,000.

The record evidence covers nearly four hundred pages and shows that from start to finish the trial was conducted as if it were a breach of promise case. On a pretense of showing malice or excusing the mischief, counsel for plaintiff offered evidence showing the amicable relations of the parties and the way they had lived together in harmony, under a promise of marriage, for nearly twenty years. The only purpose of such testimony was to inflame and prejudice the minds of the jurors. And for the same purpose, defendant was asked if he had not been too intimate with his wife before marriage. And against the most strenuous objections the court ruled that defendant must answer the question? It is almost incredible. By Mr. Cuthbert the purpose of the question was stated thus: *"To show what aroused the woman to commit the acts she did."*

But the woman was not on trial for what she did. It is hard to conceive that such testimony was offered in good faith. Its effect and purpose must have been to influence and prejudice the minds of the jury and to secure an unjust verdict. That is further shown by the mass of irrelevant matter regarding the amours of the plaintiff and the defendant for a period of some twenty years. From the beginning to the end the record of the trial is swollen with such matters. The result is a verdict grossly, fearfully, and monstrously excessive, and it is against a man who has earned his little property by Scotch frugality and hard work. It is the natural result of a nefarious practice which permits a lawyer to prosecute a damage suit for a contingent fee of 50 per cent and at the same time to practice deception and

pose before the jury as a disinterested minister of justice. There should be a law or a court rule to put a stop to such a practice.

The only real question here presented is whether to dismiss the action or to remand it for a new trial. As we think, the action should be dismissed because the evidence clearly shows the plaintiff was the aggressor and defendant had a right to protect himself, his home, and his wife against her wanton depredations. The charge of insanity was made for self-protection and for no other purpose. It was made on the advice of the officers of the law and the advice of the sheriff who had seen the depredations and declared that no sane person would commit the acts she did. It was the mildest charge that could have been made against her. On the charge of a misdemeanor the punishment would certainly have been more severe. The plaintiff has no reason to complain.

## On Petition for Rehearing.

PER CURIAM. Defendant has filed a forceful and able petition for rehearing. We have again reviewed the case, and feel impelled to adhere to our former decision.

We are entirely satisfied that an action will lie for the malicious prosecution, without probable cause, of a proceeding the object of which is to have a person adjudged insane. It has been held that the prosecution of such a proceeding without probable cause constitutes cruel and inhuman treatment within the contemplation of the laws relating to divorce so as to afford a ground for a divorce. Reichert v. Reichert, 124 Mich. 694, 83 N. W. 1008; Michels v. Michels, 120 Me. 395, 18 A.L.R. 570, 115 Atl. 161. It would seem that if the baseless prosecution of an insanity proceeding is a wrong of sufficient magnitude to justify the severing of the marriage ties, it ought to furnish a ground for the award of damages. And in our opinion it constitutes a legal wrong for which the party injured is entitled to be compensated. See Comp. Laws, 1913, § 7165.

The principal contention advanced in the petition for rehearing is that the court misapplied the rule announced in paragraph two of the syllabus. In the petition for rehearing it is said:

"We have no quarrel with the general principle enunciated by our

court in this case, nor with the general principle on the admissibility of evidence relating to prior relations as enunciated by the textbooks and decisions, but we do contend that the evidence of *friendly* relations existing between the parties in this action was not admissible to prove malice and by no stretch of the imagination could it prove malice."

As the name implies, malice is an essential ingredient of an action for malicious prosecution, and the authorities are unanimous in holding that there can be no recovery in such action unless it is established that the action or prosecution complained of was instituted maliciously. Existence of malice, however, is not enough to support such action. It must also be shown that the action or proceeding complained of was instituted without probable cause. The plaintiff, of course, has the burden of proving both malice and want of probable cause. Any evidence having a logical tendency to establish, on the one hand, the absence of probable cause, and on the other, the existence thereof, is admissible upon the question of probable cause (19 Am. & Eng. Enc. Law, p. 694); and whatever tends to show the motive or intent of the prosecutor in instigating or instituting the proceeding is properly admissible on the question of malice. Id. p. 695. So the plaintiff may introduce evidence tending to show that the defendant by the institution of the action or proceeding complained of sought to accomplish some personal or private end (id. p. 695). And the defendant may adduce any evidence having a logical tendency to rebut the showing made by the plaintiff. He may even testify "as to his motive and that he was not actuated by malice, ill will, or desire to harass the plaintiff in instituting or conducting the proceedings complained of, and that he honestly believed in the plaintiff's guilt or liability." Id. p. 695.

Malice need not be shown by direct and positive testimony. It may be established by circumstantial evidence, i. e., inferred from circumstances. "Malice, indeed, is a fact which in the nature of things is difficult if not incapable of positive, direct proof, and must therefore rest on inferences and deductions from facts, for which reason a wide range is permitted in adducing attendant circumstances that tend to throw any light upon the subject." 19 Am. & Eng. Enc. Law, 695, 696. The malice necessary to sustain an action for malicious

prosecution need not necessarily be ill will towards the plaintiff.
Legal malice will support the action, and any unjustifiable motive
constitutes legal malice. Kolka v. Jones, 6 N. D. 461, 473, 66 Am.
St. Rep. 615, 71 N. W. 558. Judge Cooley says: "Legal malice is
made out by showing that the proceeding was instituted from any
improper or wrongful motive, and it is not essential that actual ma-
levolence or corrupt design be shown." Cooley, Torts, 185. Hence
any evidence having any logical tendency to show the reason or mo-
tive which impelled the institution of the action or prosecution com-
plained of is admissible. 19 Am. & Eng. Enc. Laws, 695.

The purported purpose of the complaint made by the defendant
was to have an alleged insane person apprehended and incarcerated
in the state insane asylum. The purported purpose was not only law-
ful but commendable. One of the principal questions in the case is
whether the defendant had probable cause to believe, and whether he
honestly believed, that the plaintiff was insane. If he did, of course,
he has committed no actionable wrong. If, however, he had no prob-
able cause to, and did not, so believe, then the proceeding was insti-
tuted without probable cause, and malice may be inferred from that
fact alone. Kolka v. Jones, supra.

How could the jury pass intelligent judgment upon the motive or
purpose of the defendant in instituting the proceeding, or upon his
belief as to the truth of the charge of insanity made by him if they
knew nothing of the prior relations between the parties? Should the
action of the defendant be judged by the jury as though he had made
the charge of insanity against some strange or unknown woman who, in
his absence, had entered his house and committed the acts on which
the information in the insanity proceeding was based? To ask the
question is to answer it. In order to judge of the mental attitude of
the defendant, it was essential that the jury have as much knowledge
as possible of any and all facts which had a reasonable tendency to
influence his actions. The very existence of the relations which had
formerly existed between the plaintiff and defendant, it seems to us,
furnished some reason why the defendant might have desired to have
the plaintiff incarcerated in the insane asylum, even though he did
not believe her to be insane. He had just been sued for breach of
promise to marry. He had just returned with his wife, and they were

about to take up their residence on his farm,—where he had lived for
so many years with the plaintiff. Was it not much more to his inter-
est to have her thus taken out of the community and placed in an
insane asylum than to sue her for damages or have her arrested for in-
juring his property? The fact that the plaintiff may have committed
certain unlawful acts would not justify the defendant in charging
that she was insane and attempting to have her incarcerated in an in-
sane asylum. In other words, it would not furnish probable cause for
the inquisition for lunacy. Reasonable or probable cause depends up-
on the honest and reasonable belief of the party commencing the prose-
cution that the charge made is true. "The question of probable cause
applies to the nature of the suit; and the point of inquiry is whether
the defendant had probable cause to maintain the particular suit up-
on the existing facts known to him." Newell, Malicious Prosecution,
p. 252. Defendant was permitted to introduce all of his evidence re-
lating to the wrongful conduct of the plaintiff. Not only the facts
concerning the destruction of property but all of plaintiff's acts with
respect to the defendant and his wife were inquired into at great
length. This evidence was all submitted to the jury, and was doubtless
considered by them in determining whether defendant at the time he
instituted the inquisition for lunacy entertained an honest and rea-
sonable belief that she was insane; also, whether in instituting the
proceeding he was actuated by justifiable motives.

As stated in the former opinion, in making his complaint to the
state's attorney of Nelson county and to the county judge of Walsh
county, the defendant made no reference whatever to the relations
which had previously existed between himself and the plaintiff; nor
did he inform them of the then pending breach of promise suit. In
other words, he did not make to them a full and fair statement of all
the facts within his knowledge at that time. On the contrary facts
having a material bearing upon the very proposition then under con-
sideration were not related. In view of all the circumstances we are
not prepared to say, as a matter of law, either that the defendant had
probable cause for instituting the insanity proceedings or that he was
not actuated by malice in so doing.

Rehearing denied.

BIRDZELL, Ch. J., and CHRISTIANSON, BRONSON, and GRACE, JJ., concur.

ROBINSON, J. (on petition for rehearing). In law there is many a slip which leads to oppression and robbery. This case will serve as an example. According to the decision, it seems the action is based on slips—mere slips—made by the defendant—on slips by his attorneys—on slips by the officers of the law—on slips by the courts—and for such slips, defendant must pay from his hard earnings, $6,000.

This appeal is from a judgment for $6,000, for a breach of promise. On the pleadings, this case appears to be an action for malicious prosecution, but such were the slips of the law, and the cunning of counsel, that on the testimony, and the argument of the case, it became a second action for a breach of promise. In the first action for breach of promise, plaintiff recovered $6,000, which defendant paid, and in this action, for the same identical cause.

There is a judgment against him for another $6,000. It appears that for twenty years prior to the commencement of the action, the plaintiff passed the greater part of her time as the housekeeper and mistress of defendant. Then he married another woman and the plaintiff brought suit for a breach of promise and recovered $6,000, which defendant paid. That was his penance; that was in full settlement of the love affairs, but like a crazy woman, she went to the house of her former lover, cut up the furniture, and turned the house into a nuisance, and wrote scandalous and unprintable letters to the young wife. For that insane procedure, she was arrested on the charge of insanity. The charge was made on the advice of the sheriff, who went to the house of defendant, saw the depredations and declared that no sane woman would be guilty of such conduct. The other officers of the law agreed with him, and so defendant was arrested and was in the custody of the sheriff four days and then discharged. Then this action was commenced, to recover damages for the arrest, but on the trial, it was conducted from start to finish as if it were an action for a breach of promise, and so the first judgment was duplicated. The transcript of the testimony covers 360 typewritten pages, and nearly all pertain to the twenty years of illicit love, and the breach of promise. Defendant was first called as a witness for cross-examination.

His testimony covers 80 pages. It all relates to the story of illicit love. Of course it was all given under objections. It served no purpose only to present a false issue and to influence the minds of the jurors, and so when the case was reargued before this court, counsel for plaintiff dilated on all the details of the illicit love just as though it were a breach of promise case, and of course he argued the case in the same way before the jury. There is not in the case a word of testimony in any way tending to show any feud, malice, or ill-feeling between the parties, until the commencement of the depredations and the commencement of the suit for breach of promise. That was the cut-off. There we must draw the line. All testimony regarding prior friendly relations was clearly irrelevant and prejudicial. It had not the least tendency to prove malice. It was not offered for the purpose of proving malice. It was offered only to prejudice the jury. That is clear and manifest. The argument was not on damages by reason of arrest, in fact, she was in no manner abused or ill-treated, or damaged. Part of the time, her son of twenty-seven years was her custodian and jailer. Her actual damages amounted to practically nothing. In fact, there is good reason for believing that the arrest was beneficial. It seemed to have brought her to her senses and to have made her ashamed of her disgraceful and nefarious conduct.

Now counsel for defendant moved for a rehearing on two principal grounds:

(1) Because of error in the admission of the mass of irrelevant testimony;

(2) Because of excessive damages given under the influence of passion and prejudice.

In denying a rehearing not a word is said concerning the excessive damages and no attempt is made to justify the admission of the mass of irrelevant testimony. It is true that in the original opinion several cases are cited to sustain such testimony, but in the motion for rehearing, it is shown that the cases cited have no relevancy. This is probably the first case in all the law books where a verdict has been sustained when based on such a mass of prejudicial and irrelevant testimony. As shown in the petition for rehearing, the only purpose of such love testimony was to inflame and prejudice the minds of the juries and to appeal to their passion and prejudice. Very much do I

regret the decision and the order denying a rehearing. It virtually gives the plaintiff a reward of $6,000 for the commission of a gross misdemeanor. I cannot but regard it as a gross miscarriage of justice. I hope it may show the pressing necessity for amending the law in regard to such cases, and in regard to the contingent fees of attorneys. In such a case, the attorney who works for a contingent fee of 50 per cent should be made a party to the action and not permitted to pose as a disinterested minister of justice, and his fees should be limited to a reasonable percentage of the amount recovered.